In re HELFGOTT.

Ex parte PARKER, HOLMES & CO.

(District Court, S. D. New York. October 3, 1917.)

1. BANKRUPTCY ⬥414(3)—DEBTS—VALIDITY.
    Evidence *held* to show that an alleged indebtedness by a bankrupt in favor of his father, which appeared from his books, the entries having been made subsequent to the time it was alleged to have been incurred, was fictitious, and was part of a scheme to defraud creditors.

2. BANKRUPTCY ⬥409(1)—DISCHARGE—KEEPING BOOKS.
    Where a bankrupt, as part of an artifice to defraud his creditors, made false entries in his books, showing that he was indebted to his father, allowed his father to recover judgment uncontested, and to sell on execution his stock of goods, the bankrupt was, the entries being false and fraudulent, guilty of a failure to keep books, as required by Bankruptcy Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550 (Comp. St. 1916, § 9598), and so discharge must be denied.

In Bankruptcy. In the matter of the bankruptcy of Samuel Helfgott. Objection by Parker, Holmes & Co. to the bankrupt's discharge. On motion to confirm master's report, recommending discharge. Discharge denied.

Motion to confirm a master's report recommending a discharge in bankruptcy. The objections were, first, that the bankrupt had obtained property on a false written statement; second, that he had failed to keep books of account; third, that he had conveyed his property in fraud of creditors.

The bankrupt had signed a financial statement on September 10, 1914, omitting to state that he owed his father any money. He swore that "between August and January" of that year he had in fact borrowed of his father $500 in sums of $50, $75, $100, and that about January 14, 1915, his father, having earlier pressed him for the money, sued him, and got an uncontested judgment for $518; the same attorney appearing for the father as now appears for the bankrupt here. Execution being issued the property, which had a cost value of about $3,000 and consisted of a retail stock of shoes, was sold in execution and brought about $680. Out of this the judgment was paid, together with the costs of the sale and other incidentals, amounting in all to $100. The bankrupt received the balance of only about $60, and, having absented himself from the sale, made no inquiries about it. He was, he said, at all times on

friendly terms with his father, and began to live with him a few months after the events recorded. After execution issued, about January 20, 1915, and until the sale on January 26, 1915, he was allowed to remain in possession and continue the sale of the stock on his own account.

The father, being called, corroborated his son's story, giving as an explanation of his access to such large sums, since he was employed at $16 a week or less, that he had from time to time pawned jewelry, and thus raised the sums in question.

The bankrupt kept a ledger, in which were entered his accounts with his creditors, and upon one page appears the account of his father, consisting of seven items, aggregating exactly $500. This entry was concededly made on December 30 or 31, 1914, shortly before the action was started by the bankrupt's father. The date of the items are between September 18th and December 30th, and are said by the bankrupt to have been taken from loose slips of paper recording the loans, made at the time when the money was borrowed, and destroyed when the ledger entry was made.

The master concluded that the evidence did not show that the written statement was false, since it did not appear that any of the money, if borrowed at all, had been borrowed before September 10th. He concluded, also, that the sale in execution was a device to convey away property in fraud of creditors, but that, being more than four months before petition filed, it was not a bar to discharge; the objecting creditor having failed to show that the bankrupt had kept concealed any of the proceeds within that period. To these conclusions no protest is now made. The master likewise concluded that the destruction of the slips was not a failure to keep books or papers with intent to conceal the bankrupt's financial condition, because he was not satisfied that the father ever lent his son the money as alleged. To this the objecting creditor urges that, granted this was true, the entry in the ledger was at least to give color to the fraudulent conveyance, and, being a false entry, falls within the specification of failing to keep books of account.

Samuel J. Rawak, of New York City, for Parker, Holmes & Co.
Joseph H. Robins, of New York City, for the bankrupt.

LEARNED HAND, District Judge (after stating the facts as above). The only issue open is whether the loans by the bankrupt's father were fictitious. If they were genuine, there is no adequate reason to suppose that the method of keeping the books and records was with fraudulent intent, under section 14b(2). It must be conceded, moreover, that, if the loan was genuine, the bankrupt's apathy about the sale and ruin of his business might have arisen from a desire to let his father get back his money out of a business from which he knew that he would never receive a cent anyway, and that his father's apparently harsh conduct would not have ruined a business which could ever have been successful, because at any reasonable valuation the bankrupt was insolvent.

[1] Nevertheless the loan was between near relatives, a circumstance at which bankruptcy courts always look with suspicion, and concededly it was not entered in any contemporaneous permanent record, although one existed proper for the case. Moreover, the entry of the whole items about January 1, 1915, and very shortly before the action was commenced, and the supposed destruction of the slips, is a sinister circumstance. If the bankrupt had in fact at that time desired to make more permanent evidence of a real loan, apprehending some question of its authenticity, why should he have destroyed the original slips which would have gone far to corroborate it? Is it not more probable

that the entry, made after the supposed demand for payment, was in fact a blind for a fraudulent conveyance? The whole story fits perfectly with a prepared plan to make way with the assets for the benefit of the father or the son or both.

On the other hand, the father was in no position to advance $500 in less than four months. He disclaimed any savings, and took recourse to a common enough device in such cases of a story about pawning jewelry. Yet, even upon his own statement, the value of his jewelry was only $300 or $400, upon which it is impossible to suppose that he could raise more than $200 or $250. This, coupled with an alleged loan of $100 from one Sam Sukowsky, is all that he tries to account for. His total earnings from September 15th to December 30th were at most not more than $240, and it is incredible that out of these he could have made up the difference of $150 and lived with his wife for $90.

[2] The master found that the sale was fraudulent, a conclusion impossible, if it was only a preference, and further said that he was not satisfied that any loan had ever been made. His attention was apparently not drawn to the point that the entry in the ledger might be a failure to keep books under section 14b(2), as the necessary consequence of that conclusion. That question arises, once the loan is found to have been fictitious, as I find it to be. The making of false entries in the books is, of course, a failure to keep true books of the most glaring sort, and only from true books can the bankrupt's financial condition be ascertained. In this case the bankrupt's intent was to conceal his financial condition by these false entries, because he expected to use them in support of his fraudulent effort to do away with his property.

Therefore it follows that the second specification was sustained. As in most such cases, there is no direct evidence of the fact; but the proof is more than mere suspicion, and there is small doubt that the whole scheme was an artifice to defraud creditors, of which the ledger entry was a part.

Discharge denied, on the second specification, with costs.